# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DIXIE L. BAKER, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>INTERNAP NETWORK SERVICES )<br>CORPORATION, )<br>)<br>Defendant. )<br>) | Case No. 09 c 875 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Dixie Baker has sued Internap Network Services Corporation, her former employer, to recover commissions she claims she earned from sale of content delivery network services on three accounts. Baker was paid commissions on those accounts, but at a lower rate than she claims was agreed upon. Internap admits that it gave Baker a document establishing a default formula for commission calculations but argues that it had the discretion to reduce individual commission payments under the terms of a larger commission plan that applied to all sales employees. Baker seeks to recover unpaid commissions under three theories: first, based on what she claims was an implied-in-fact contract between her and Internap that she would be paid according to the formula (count 1); second, on a theory of unjust enrichment in the event Internap was not contractually obligated to follow the formula (count 3); and third, under the Illinois Sales Representative Act (count 2).

Internap has filed a counterclaim seeking to recover the amount it paid Baker on one of the accounts in question. It contends the contract with that customer later fell through and that Internap did not receive payment.

Internap has moved for summary judgment on all of Baker's claims, and Baker has moved for summary judgment on Internap's counterclaim. For the reasons stated below, the Court grants summary judgment in favor of Internap on Baker's Illinois Sales Representative Act claim but otherwise denies the motions for summary judgment.

**Background**

VitalStream, Inc. hired Baker as a sales representative in September 2006. Baker's job at VitalStream was to sell content delivery network (CDN) services. CDN services include live and on-demand streaming video sent over the Internet to computers and mobile devices. In February 2007, Internap acquired VitalStream. Baker continued to work for Internap after the acquisition, though the nature of her position changed. At VitalStream she had been in charge of her own accounts, but after the acquisition she became an "overlay specialist" who did not have her own accounts but supported other sales representatives by providing information and sales expertise concerning CDN services.

Baker's compensation at both VitalStream and Internap included commissions she earned for sales. Shortly after the Internap acquired VitalStream, Internap gave Baker a compensation schedule that included a formula it would use to calculate her commissions (the 2007 CDN plan). Baker received commissions according to this formula for most sales she made on behalf of Internap.

In July and August 2007, Baker and several other Internap employees worked on

2

three large accounts that yielded big contracts. Baker's commissions on these accounts would have been very large had they been calculated according to the formula in the 2007 CDN plan. Internap, however, adjusted the commissions downward, and Baker received roughly ten percent of what she would have earned had Internap followed the formula in the 2007 CDN plan. Baker complained to her supervisor and to an Internap vice president, but she received no additional commission payments. Baker continued to work for Internap until April 2008, when she resigned after a corporate reorganization.

Baker claims that her commission arrangement with Internap constituted an implied-in-fact contract. In count 1, she alleges that Internap breached that contract when it deviated from the commission formula to calculate her commission for the three accounts in question. In the alternative (count 3), she alleges that even if Internap was not contractually obligated to pay her according to the formula, it was unjustly enriched when it paid her the lower commissions, and she is therefore entitled to recover the full amount she claims. Finally, in count 2, Baker alleges that Internap's actions violated the Illinois Sales Representative Act, 820 ILCS 120/2, under which a company must pay an independent sales representative all owed commissions within thirteen days of the termination of a contract with that representative.

Internap contends that the 2007 CDN plan it gave Baker was only one part of a larger commission plan. It claims that the broader commission plan, which is described in a multiple-page document, applied to all Internap employees who were paid on commission (the 2006 Commission Plan). That plan, which Internap insists applied to Baker, states that the company reserves the right to adjust or reduce any individual

3

commission payment.

Internap denies that had a contractual obligation to pay Baker according to the commission formula from the 2007 CDN plan for the three accounts in question, because the 2006 Commission Plan gave it the discretion to reduce those awards as it saw fit. Internap also argues that it was not unjustly enriched by its decision to reduce the commission awards and that the amount it gave Baker on those accounts reflected the actual value she contributed to those sales. Finally, it argues that Baker does not qualify as a sales representative under the Illinois Sales Representative Act.

Internap has also counterclaimed, seeking to recover the commissions it paid Baker on one of the accounts in question. That account fell through after Baker left Internap, and Internap made all current employees return the commissions they had been paid on the account. Internap now seeks to recover the commissions it paid Baker on the account pursuant to the terms of a charge-back provision included in both the 2006 Commission Plan and the 2007 CDN plan.

Each party has moved for summary judgment on the opposing party's claims. For the reasons stated below, the Court grants summary judgment in favor of Internap with regard to count 2 of Baker's complaint but otherwise denies the motions.

## Discussion

On a motion for summary judgment, the Court draws "all reasonable inferences from undisputed facts in favor of the nonmoving party and [views] the disputed evidence in the light most favorable to the nonmoving party." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2009).

## A. Implied-in-fact contract (count 1)

In count one, Baker alleges that "Internap's representations and conduct with respect to the payment of commissions constitute binding terms of an implied-in-fact contract of compensation" that obligated it to pay her commissions according to the formula in the 2007 CDN plan for all sales in which she was involved. Compl. ¶ 57. She alleges that Internap breached that contract when it did not pay her according to the formula for the three accounts at issue here.

An implied-in-fact contract arises "not by the express agreement of the parties, either verbal or written, but by their acts and conduct showing an intention to be bound." *Frey v. Belleville News-Democrat, Inc.*, 64 Ill. App. 3d 495, 498, 381 N.E.2d 705, 708 (1978). Put another way, an implied-in-fact contract arises "where circumstances under common understanding show a mutual intent to contract." *Foiles v. N. Greene Unit Dist. No. 3*, 261 Ill. App. 3d 186, 198, 633 N.E.2d 24, 25 (1994).

Baker contends that Internap's course of conduct demonstrates its intent to be bound by the terms of the 2007 CDN plan. According to Baker, the only document Internap gave her regarding compensation was the 2007 CDN plan, and it paid her according to the formula contained in that plan on every account she worked on except for the three at issue in this case. She states that she was never given, never saw, and was unaware of the 2006 Compensation Plan or any other document that gave Internap discretion over individual commission awards.

In its motion for summary judgment, Internap contends that there was no implied-in-fact contract. It argues that the 2006 Compensation Plan applied to Baker

and gave it the authority to modify individual commission awards. It further argues that Baker was an at-will employee and thus it was free to unilaterally alter the terms of her employment, including her compensation, at any time, even if she was ignorant of the 2006 Compensation Plan. Internap further argues that Baker continued to work for the company for seven months after she received reduced commissions on the three accounts at issue. Baker's choice to continue working for Internap after her commissions were reduced, Internap argues, constituted "acceptance" of Internap's "offer" to change to the terms of her compensation and defeats any claim she has that Internap was bound to the terms of any earlier implied-in-fact contract. *See, e.g., Geary v. Telular Corp*, 341 Ill. App. 3d 694, 700, 793 N.E.2d 128, 133 (2003).

According to Internap, the issue of whether an implied-in-fact contract exists is a question of law for the Court to decide. Def.'s Mem. in Support of Summ. J. at 10. The Court disagrees. Under Illinois law, the existence of a contract is a question of law "when the basic facts are not in dispute." *Liautaud v. Liautaud*, 221 F.3d 981, 985 (7th Cir. 2000) The question of whether an implied-in-fact contract existed depends on the intent of the parties and what their behavior indicated. If there is a genuine dispute about those matters, determination of the existence of a contract is appropriately left to a jury. *See Frey*, 64 Ill. App. 3d at 498, 381 N.E.2d at 708-09 ("We believe that plaintiffs must be afforded an opportunity to present its [sic] evidence to the jury tending to prove the existence of a contract implied in fact"); *Dallis v. Don Cunningham & Assoc.*, 11 F.3d 713, 716 (7th Cir. 1993) (affirming a jury verdict in a case where the question of whether an implied-in-fact contract existed was left to the jury).

6

In this case, the basic facts underlying whether the parties had an implied-in-fact contract concerning Baker's commission are in dispute. Baker staunchly maintains in her filings and in her deposition testimony that she was unaware of any policy that allowed Internap to alter her commissions. She contends that Internap's practice of paying her according to the commission formula in every instance expect the ones here demonstrates its intention to abide by the 2007 CDN plan. This position finds support in Illinois caselaw. *See, e.g.*, *Landers-Scelfo v. Corp. Office Sys., Inc.*, 356 Ill. App. 3d 1060, 1067, 827 N.E.2d 1051, 1058 (2005) ("because an employment agreement can be entirely implicit, alleging that an entity paid a worker according to a demonstrable formula for work done is sufficient to raise an inference that the entity and the worker had an employment agreement that embodied that formula.")

Internap contends that Baker's status as an at-will employee gave it the ability to modify her commissions at any time, regardless of the terms of the 2007 CDN plan or the 2006 Compensation Plan. This argument does not carry the day. If, in fact, there was an implied-in-fact contract between the parties, that could supersede the presumption of at-will employment status. *Hernandes v. Trimarc Corp.*, 38 Ill. App. 3d 1004, 1007, 350 N.E.2d 202, 205 (1976) (employee originally hired at will received a letter outlining specific commission terms, and it was for a jury to decide whether that letter created a contract that destroyed the at-will nature of the relationship.) Baker's argument is, in effect, that the 2007 CDN plan, and Internap's ongoing payments according to that plan, constituted a contract that changed her from an at-will employee whose compensation could be altered at any time to one who was entitled to be paid according to particular contract terms. The Court has already determined that Baker

7

should be permitted to present her evidence of the existence of an implied-in-fact contract to a jury. Internap's rebuttal that she remained an at-will employee likewise presents a jury question.

Furthermore, even if the employment relationship was at will and not governed by a contract, it is unclear whether the parties' actions with regard to the three commission payments at issue constituted an offer and acceptance of modified compensation terms. An employer can unilaterally modify the terms of an at-will employee's employment prospectively, and the employee "accepts" that "offer" when he continues to work for the employer under the new terms. *See Geary v. Telular Corp*, 341 Ill. App. 3d 694, 653, 793 N.E.2d 128, 133 (2003).[1] Internap has cited no authority, however, that stands for the proposition it can make such a modification retroactively, and Illinois cases suggest that such changes to compensation terms cannot be applied to commissions already earned. *Id*. Baker contends that she had earned the commissions on the three accounts in question before Internap decided to reduce her commission amounts. Unlike an employer's decision to change a compensation structure going forward, a retroactive adjustment to the compensation schedule, without prior notice to the employee, does not bear the hallmarks of an offer as that term is used in contract law.

The parties genuinely dispute whether Baker knew about the 2006 Compensation Plan, whether it applied to her, whether they entered into an implied-in-

---

[1] It is less than clear in Illinois caselaw how long an employee has to stay on, and under what circumstances, before continued employment constitutes acceptance of modified compensation terms.

fact contract based on the formula contained in the 2007 CDN plan, and whether any such contract was superseded by Baker's choice to continue working for Internap after it modified her commissions on these three accounts. These genuine issues of material fact compel the Court to conclude that count one cannot be appropriately decided at the summary judgment stage.

**B.     Quantum meruit (count 3)**

As an alternative to the breach of contract claim advanced in count one, Baker argues that even if no contract existed, she was entitled to commissions consistent with the formula in the 2007 CDN plan and that Internap was unjustly enriched when it withheld those commissions. Baker argues that she provided services to Internap, Internap received payment from clients on accounts she worked on, and Internap paid her only ten percent of the commission she was due. Baker contends that "[t]he reasonable value of the services Ms. Baker provided Internap for each account at issue equals the full amount of each commission actually owed to Ms. Baker and not the partial commission payment made by Internap in each instance." Pl.'s 2d Am. Compl. ¶ 71.

The Court notes that if there was no contract between the parties regarding the rate of commission to which Baker was entitled (a requirement for recovery under a theory of unjust enrichment, *K. Miller Constr. Co., Inc. v. McGinnis*, 394 Ill. App. 3d 248, 255, 913 N.E.2d 1147, 1153 (2009)), then there is no reason to assume that the amount to which Baker might be entitled for her work is in any way linked to the commission formula contained in the 2007 CDN plan. As stated above, the Court has concluded that there is a genuine dispute about whether such a contract existed. If a

9

jury were to find that no such contract existed, Baker could proceed on her unjust enrichment theory to recover the reasonable value of services she provided to Internap for which she claims she was not compensated. At trial, the Court is prepared to instruct the jury that if it finds there was no contract governing Baker's employment, it may find that Baker is entitled to the reasonable value of the services she provided for which she was not paid, not the amount calculated according the 2007 CDN plan formula. The Court denies Internap's motion for summary judgment on count 3.

**C.     Illinois Sales Representative Act (count 2)**

Under the Illinois Sales Representative Act (ISRA), a company that pays a sales representative on commission is required to pay the sales representative any commissions owed to her within thirteen days of the termination of any contract between the sales representative and the company. 820 ILCS 120/2. Baker argues that she was a sales representative who worked on commission and that Internap did not pay her the commissions it owed as defined by the terms of the 2007 CDN plan within thirteen days of the end of her employment with Internap.

The ISRA defines "sales representative" as "a person who contracts with a principal to solicit orders and who is compensated, in whole or in part, by commission, but shall not include . . . one who qualifies as an employee of the principal pursuant to the Illinois Wage Payment and Collection Act [IWPCA]." 820 ILCS 120/1(4). Internap argues that Baker is not a sales representative under the ISRA because she was an employee of Internap. Baker does not dispute that she was an Internap employee but argues that the IWCPA does not apply to her because Internap is not an Illinois corporation. (It is incorporated in and has its principal place of business in Georgia.)

10

There is no dispute, however, that Internap had operations in Illinois, and Baker worked for Internap in Illinois.

The IWPCA defines "employer" as "any individual, partnership, association, corporation, limited liability company, business trust, employment and labor placement agencies . . . , or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed." 820 ILCS 115/2. The definition is not limited to those corporations that are incorporated in Illinois or whose principal place of business is in Illinois. Baker's claim under the ISRA fails because does not satisfy the statutory definition of "sales representative."[2] The Court therefore grants summary judgment in favor of Internap on count 2.

**D.     Internap's counterclaim**

Internap has asserted a two-count counterclaim seeking repayment of commissions that it paid Baker for her work on Jack9, one of the accounts at issue in this case. According to Internap, that contract failed after Baker had left the company, and the company charged back all commissions paid to sales representatives on that account pursuant to the 2006 Commission Plan and the 2007 CDN plan. Internap seeks to recover the $5,480 in commissions it paid to Baker on that account either under the terms of the 2006 Commission Plan and 2007 CDN plan or, if the Court

---

[2] The case Baker cites in support of her argument is entirely inapposite. That case involved a court's weighing of whether a corporation's activities in a state were sufficiently permanent and continuous to satisfy the "doing business" standard for exercising personal jurisdiction. *Liaquat Khan v. Van Remmen, Inc.*, 325 Ill. App. 3d 49, 756 N.E.2d 902 (2001). There is no similar issue here.

determines that those plans do not bind Baker, under a theory of unjust enrichment.[3]
Baker argues that the contract did not fail but rather was renegotiated and that because this happened after she left the company, Internap can no longer seek chargebacks from her.

The relevant issues on Internap's counterclaims mirror those on Baker's breach of contract claim. Both the 2006 Compensation Plan and the 2007 CDN plan include language that allows for the company to charge back commissions in the event a contract on which an employee has been paid a commission later falls through. The parties disagree about the extent to which these documents apply to Baker. Further, the documents are arguably silent on whether the company may impose chargebacks after an employee has left the company. Like Baker's claims in counts one and three, this claim depends in large part on the terms of the compensation plan documents and the extent to which those documents contractually bind the parties. The Court finds that this issue is so closely intertwined with the issues relating to Baker's breach of contract and unjust enrichment claims that summary judgment is similarly inappropriate here. The Court therefore denies Baker's motion for summary judgment on Internap's counterclaim.

**Conclusion**

For the reasons stated above, the Court grants defendant's motion for summary judgment as to count 2 of plaintiff's complaint but otherwise denies that motion [docket

---

[3] Internap also asserted an additional claim and an affirmative defense, on which Baker sought summary judgment, but Internap has voluntarily dismissed those claims. Def.'s Resp. to Pl.'s Mot. for Summ. J. at 3 n.2.

no. 71] as well as plaintiff's motion for summary judgment [docket no. 77]. The case remains set for trial on November 15, 2010, at 9:45 a.m., but that date may require a slight adjustment based on the Court's trial schedule. The final pretrial conference is set for November 2, 2010 at 3:30 p.m. The case is set for a status hearing on October 12, 2010 at 9:30 a.m.

                                                  MATTHEW F. KENNELLY
                                                  United States District Judge

Date: September 23, 2010