IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIXIE L. BAKER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 09 C 875 |
| INTERNAP NETWORK SERVICES CORPORATION, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Dixie Baker sued Internap Network Services Corporation, her former employer, to recover commissions she claimed she earned from the sale of content delivery network services on three accounts. After a three-day trial, a jury found for Baker and awarded her $222,184.19 in compensatory damages. Internap has moved for entry judgment as a matter of law in its favor pursuant to Fed. R. Civ. P. 50. In the alternative, Internap asks the Court to amend the judgment or order a new trial pursuant to Fed. R. Civ. P. 59. Baker has also moved to amend the judgment to include prejudgment interest and to tax costs against Internap. For the reasons stated below, the Court denies Internap's motions and grants Baker's motions in part.

### Discussion

The Court provided a summary of the relevant background facts in its previous opinion granting in part and denying in part Internap's motion for summary judgment. *Baker v. Internap Network Serv. Corp.*, No. 09 C 875, 2010 WL 3834003 (N.D. Ill. Sept.

23, 2010). The Court thus turns to the merits of Baker and Internap's various post-trial motions.

**1.      Internap's Rule 50 and Rule 59 motions**

Rule 50 authorizes a court to enter judgment as a matter of law if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). Under this standard, "the question is simply whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of the plaintiff." *Hall v. Forest River, Inc.*, 536 F.3d 615, 619 (7th Cir. 2008). Similarly, Rule 59 allows a court to order a new trial or amend a judgment if "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010) (internal quotation marks omitted). Courts "will set aside a verdict as contrary to the manifest weight of the evidence only if no rational jury could have rendered the verdict." *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 444 (7th Cir. 2009) (internal quotation marks omitted).

In support of its motions, Internap argues that (1) the Court improperly permitted the jury to determine whether a contract existed between the parties, and in any event the jury's finding that a contract existed was not supported by the evidence presented at trial; and (2) the jury disregarded its instructions regarding the Jack9 contract and awarded Baker damages that were not supported by the evidence.

### a. The existence of an implied-in-fact contract

Internap first argues that "the issue of whether a contract existed should not have been presented to the jury to determine." Def.'s Mot. at 11. Under Illinois law, an implied-in-fact contract exists "where circumstances under common understanding show a mutual intent to contract." *Foiles v. N. Greene Unit Dist. No. 3*, 261 Ill. App. 3d 186, 198, 633 N.E.2d 24, 25 (1994). The existence of a contract is a question of law "when the basic facts are not in dispute." *Liautaud v. Liautaud*, 221 F.3d 981, 985 (7th Cir. 2000). By contrast, the existence of an implied-in-fact contract is a question for the trier of fact if there is a genuine dispute regarding the parties' actions and mutual intent. *See Frey v. Belleville News-Democrat, Inc.*, 64 Ill. App. 3d 495, 498, 381 N.E.2d 705, 708 (1978) (recognizing that because "[a] contract implied in fact arises not by the express agreement of the parties, either verbal or written, but by their acts and conduct showing an intention to be bound," summary judgment is improper if a party "can present facts[ ] which support a finding of such a contract").

Internap acknowledges that the Court "den[ied] Internap's motion for summary judgment on this same issue." Def.'s Mot. at 7. As the Court noted in its previous opinion, the parties disputed basic facts bearing on whether an implied-in-fact contract existed, such as "whether Internap's practice of paying her according to the commission formula in every instance [except] the ones here demonstrates its intention to abide by the 2007 CDN plan." *Baker*, 2010 WL 3834003, at *4. These disputes persisted in the evidence as it was presented at trial. The Court reaffirms its earlier conclusion that the resolution of these disputed questions of fact was a task properly left to the jury. *Cf.*

*Frey*, 64 Ill. App. 3d at 498, 381 N.E.2d at 708-09 (concluding that "evidence . . . tending to prove the existence of a contract implied in fact" should have been presented to the jury). Internap's argument that Baker's claim is actually based on a theory of express contract, the existence or non-existence of which should be a question for the court instead of the jury, also misses the mark. Baker argued throughout the case that an implied-in-fact contract existed based on the parties' course of dealing with respect to the 2007 CDN plan.

Internap also argues that "the record as a whole did not support a finding that the [2007 CDN plan] formed a contract." Def.'s Mot. at 7. To be sure, Internap's witnesses testified that the 2007 CDN plan was only part of a broader compensation plan. But other testimony and evidence supported the existence of an implied contract as Baker contended. Specifically, Baker testified that during the period of her employment at Internap she consistently received commissions according to the 2007 CDN plan and was paid such commissions one month after the month in which the sale was signed. A reasonable jury could have credited Baker's testimony and discredited the testimony and arguments offered by Internap and, as a result, could properly find that an implied-in-fact contract existed based on the 2007 CDN plan and the parties' course of dealing.

  b. **The Jack9 account**

Internap next argues that reversal is required because the jury disregarded its instruction on Internap's defense regarding the Jack9 account. This instruction told the jury that it should find for Internap if it concluded that (1) a term of Baker's contract with Internap allowed Internap to reduce an employee's commission on an account if that account failed, and (2) the Jack9 account failed. Internap contends that both conditions

4

were satisfied, and therefore "there was no sufficient evidentiary basis for a reasonable jury to award Plaintiff any damages on the Jack9 account." Def.'s Mot. at 11.

Internap has failed to show a proper basis for overturning the jury's decision to award damages to Baker on the Jack9 account or ordering a new trial on that point. As noted above, Baker testified that she was paid commissions in accordance with the 2007 CDN plan. She also testified that the 2007 CDN plan provided Internap with some discretion to reduce a commission on the Jack9 account. Importantly, however, David Abrahamson, vice president of global sales for Internap, testified that the 2007 CDN plan contained no provision permitting a reduction, or "charge-back," of a former employee's commission. Because the evidence showed that the Jack9 contract did not fail until after Baker's employment with Internap ceased, the jury reasonably could conclude that Internap's defense to paying Baker a commission on the Jack9 contract, as embodied in the referenced jury instruction, did not apply. Accordingly, Internap has failed to demonstrate that the jury's decision to award damages to Baker on the Jack9 account was against the manifest weight of the evidence.

Internap also contends that the jury's award of $117,833.45 on the Jack9 contract was not supported by the evidence because "[Baker] admitted that at most she was entitled to $49,325.62 on the Jack9 account." Def.'s Mot. at 11-12. It is relatively obvious that the jury arrived at its damages award by subtracting the amount of money Baker actually received for her work on the Jack9 contract ($5,480.63) from her maximum eligible commission on the Jack9 account ($123,314.08). The latter figure appears in an Internap document and was testified to by Randal Thompson, senior vice president of global sales for Internap. Though Baker testified that she believed the

5

$123,314.08 figure was the result of a miscalculation, the jury was entitled to credit Thompson's testimony and to conclude that Baker was entitled to a larger commission than she sought.

**2. Baker's motion to amend**

Baker has filed a separate motion pursuant to Fed. R. Civ. P. 59(e) and the Illinois Interest Act, 815 ILCS 205/2, to amend the judgment entered by the Court after the jury's verdict to include prejudgment interest. Internap argues that Baker is not entitled to prejudgment interest because (1) the jury's award was not based upon an "instrument of writing" as required by section 205/2, and (2) Baker's commissions were not fixed and easily calculable.

**a. "Instrument of writing" requirement**

Under Illinois law, prejudgment interest is generally recoverable "only where allowed by agreement of the parties or by statute." *First Nat'l Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 214, 872 N.E.2d 447, 479 (2007); *see also Tri-G, Inc. v. Bosselman & Weaver*, 222 Ill. 2d 218, 257, 856 N.E.2d 389, 412 (2006) (same). Under section 205/2, "[c]reditors shall be allowed to receive [interest] at the rate of five (5) per centum per annum for all moneys after they become due on any . . . *instrument of writing*." 815 ILCS 205/2 (emphasis added). This provision is satisfied if two conditions are met. "First, the written instrument must establish a debtor/creditor relationship." *Adams v. Am. Int'l Grp.*, 339 Ill. App. 3d 669, 674, 791 N.E. 2d 26, 30 (2003). "Second, the written instrument must contain a specific due date." *Id.*

The Court concludes that the 2007 CDN plan satisfies both of these conditions.

6

First, as discussed above, the jury found that the plan was the basis for an implied-in-fact contract between Internap and Baker. Internap argues that the plan is not an "instrument of writing" because, standing alone, the plan itself is not an express written agreement. But courts have concluded that a writing establishes a debtor/creditor relationship within the meaning of section 205/2 when that writing, though not itself an express written agreement, nevertheless forms the basis for an agreement between the parties in combination with an established course of dealing. *See, e.g., In re S.N.A. Nut Co.*, No. 00 C 2820, 2000 WL 988528, at *4 (N.D. Ill. July 17, 2000) ("The evidence seems clear that the indebtedness was created by the writing originating from S.N.A. because by consistent course of dealing between the parties the document was agreed to state the terms governing the transactions between the parties. Thus the writing as found by the bankruptcy judge was a writing within the meaning of Section 205/2 because it forms the basis for the indebtedness."). Similarly, the jury in this case found that the terms of the parties' implied-in-fact contract were stated in the 2007 CDN plan. As such, the plan established a debtor/creditor relationship between the parties within the meaning of section 205/2.

The Court also finds that the 2007 CDN plan contains a specific due date. As discussed above and established at trial, the 2007 CDN plan states that commissions were to be paid one month after the month in which the sales order for the relevant contract was signed. This is sufficient to establish a specific due date under applicable law. *See Adams*, 339 Ill. App. 3d at 674, 791 N.E.2d at 30 (noting that this requirement is met if the instrument "bear[s] either a specific *or an inherent* date by which the indebtedness created comes due") (emphasis added).

### b. "Fixed and easily calculable" requirement

Internap also argues that Baker cannot recover prejudgment interest because the amount of interest due is not fixed and easily calculable. For a party to recover prejudgment interest in Illinois, "the amount due must be liquidated or subject to an easy determination." *Santa's Best Craft, L.L.C. v. Zurich Am. Ins. Co.,* ___ Ill. App. 3d ___, 941 N.E.2d 291, 308 (2010).

As discussed above, the jury found in favor of Baker on the question of whether Internap breached an implied-in-fact contract with her. Given this, the jury was able to calculate easily the unpaid commission owed by Internap under the contract. Specifically, the evidence at trial established that the parties' contract was based on the 2007 CDN plan, which in turn states that commission payments become due one month after the month in which the contract for the relevant account was signed. The jury quite obviously calculated the amount Internap owed Baker by using documents that reflected Internap's own view of the maximum commission for which Baker was eligible on each disputed account.

Internap contends that the amount it owes is not fixed and easily calculable because the 2007 CDN plan merely provided for initial advance payments that were subject to charge-back at Internap's discretion, not amounts actually owed to Baker as commission. This argument is, at its core, simply a restatement of Internap's trial theory. The jury rejected that theory and found Internap liable for a fixed amount of damages based on an implied contract that included an easily determinable due date for commissions owed. This is sufficient to establish the amount of prejudgment interest owed by Internap. The Court will direct the Clerk to amend the judgment to

include prejudgment interest in the amount of $35,426.97.

3.      **Baker's motion to tax costs**

Baker has also filed a motion to tax costs against Internap. "[C]osts other than attorney's fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d). The types of litigation costs that are recoverable by a prevailing party are established by statute. *See* 28 U.S.C. § 1920. "[I]n addition to being authorized by statute, a cost must be both reasonable and necessary to the litigation for a prevailing party to recover it." *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008).

Internap challenges portions of Baker's motion to tax costs, contending that Baker (1) has not shown that the itemized deposition costs were reasonable and necessary, (2) seeks excessive copying costs, and (3) seeks impermissible shipping and delivery costs.

  a.    **Deposition costs**

Baker has sought costs connected with five depositions. Internap argues that this request should be denied because Baker merely provided general invoices without specific documentation of the breakdown of costs for each deposition, which it contends make it impossible to determine whether these costs were reasonable and necessary. Internap also contends that the first deposition of James Prochot and the deposition of David DeGroff were not reasonable and necessary expenses because Baker herself sought to depose Prochot a second time and never called DeGroff at trial.

Internap's objections do not warrant a denial of costs. In her reply brief, Baker

9

provided additional invoices with greater detail regarding the deposition charges. She also adjusted her deposition reimbursement requests downward by $2,165.94 so that the proposed reimbursement does not exceed the approved rate of reimbursement for ordinary transcripts. Given this adjustment, Baker's requests are reasonable. Further, DeGroff and Prochot were important figures relating to Baker's claim against Internap – or at least were reasonably believed to be such. DeGroff was Baker's immediate manager, and Prochot was responsible for calculating employees' monthly commissions. The Court therefore concludes that these witnesses' depositions qualify as reasonable and necessary expenses. The fact that DeGroff and Prochot were deposed again later, or that DeGroff did not testify at trial, does not render their initial depositions unnecessary under section 1920. *See Mother & Father v. Cassidy*, 338 F.3d 704, 712 (7th Cir. 2003) ("The determination of necessity under 28 U.S.C. § 1920 . . . must be made in light of the facts known at the time of the deposition, without regard to intervening developments that render the deposition unneeded").

Accordingly, Baker may recover $3,861.15 in deposition costs from Internap. This is the sum of the following itemized costs: $881.55 for the Baker deposition; $671.50 for the Abrahamson deposition; $919.70 for the first Prochot deposition; $567.75 for the second Prochot deposition; and $820.65 for the DeGroff deposition.

    b.    **Copying costs**

Internap also opposes Baker's request for copying costs in the amount of (1) $375.30 for 2,502 pages consisting of the court filings, written discovery, the pretrial order and exhibits listed in it, and the Court's electronic rulings; and (2) $392.40 for four copies of each deposition transcript.

10

Section 1920 authorizes fees for copies of "transcripts" and "any materials" that are "necessarily obtained for use in the case." 28 U.S.C. § 1920(2), (4). This includes "copies attributable to discovery and the court's copies of pleadings, motions and memoranda." *Autozone, Inc. v. Strick*, No. 03 C 8152, 2010 WL 2365523, at *2 (N.D. Ill. June 9, 2010) (internal quotation marks omitted). The prevailing party must provide "enough information to allow the court to make a determination that the costs sought are, in fact, authorized by [section] 1920." *Id.* Baker has identified these copies as having been created for use at trial or on pre-trial motions. The Court concludes that Baker has provided sufficient information to establish that the $375.30 she seeks for copying court filings, discovery materials, and so on were reasonable and necessary to her prosecution of the case. The Court will cut by three-quarters, however, the $392.40 she requests for making four copies of each of deposition transcripts. Baker already had copies of these (as did Internap), and the Court is unpersuaded that it was reasonably necessary – as opposed to merely convenient – to make four additional copies to use at trial. The amount recoverable is $98.10, a reduction of $294.30.

Baker also seeks $54.78 for fifty-four pages of copies made at the hotel in which the Prochot and DeGroff depositions were held. Internap argues that this is an excessive per-page rate of recovery. The Court concludes that Baker is entitled to recover $10.80, or twenty cents per page, for these documents. *See Kaplan v. City of Chicago*, No. 05 C 2001, 2009 WL 19407889, at *4 (July 6, 2009) (noting that "courts in this district have found photocopying costs between $0.10 and $0.20 per page to be reasonable").

### c. Shipping and delivery costs

Finally, Baker seeks $105.24 in costs for shipping and overnight mail delivery. These costs are considered ordinary business expenses and are not recoverable by a prevailing party. *See Am. Nat. Ins. Co. v. Citibank, F.S.B.*, 623 F. Supp. 2d 953, 956 (N.D. Ill. 2009). As such, Baker is not entitled to recover these costs.

### d. Summary of costs

Given the above findings, Baker is entitled to recover $8,536.74 in costs. This is the difference between the amount Baker sought in her bill of costs ($11,146.20) and the sum of the following requests, all of which the Court denies: $2,165.94 in deposition costs; $338.28 in copying costs; and $105.24 in shipping and delivery costs.

### Conclusion

For the reasons stated above, the Court denies defendant's motion for judgment as a matter of law and its motion for amendment of the jury verdict or a new trial [docket no. 163]. The Court grants in part plaintiff's motion to tax costs [docket no. 169] and taxes costs in favor of plaintiff and against defendant in the amount of $8,536.74. Finally, the Court grants plaintiff's motion to amend the judgment [docket no. 166] and directs the Clerk to enter an amended judgment stating that judgment is entered in favor of the plaintiff and against the defendant in the amount of $257,611.16.

                                                                                            _____
                                                                                            MATTHEW F. KENNELLY
                                                                                            United States District Judge

Date: April 5, 2011